Prisons and jails all over the country each year accommodate Muslims who observe Ramadan's month-long daily fasts without issue and without the court's intervention. But the Washington Department of Corrections has committed itself to a policy that ensures that some Muslims will be excluded from receiving food as they observe Ramadan's fast. Now those the way that those policies exclude people are in two folds. On one hand because the Washington Department of Corrections has a artificial what the district court called an artificially early sign up process people that arrive at the facilities late or somehow miss the sign even if the facility has a month or two months or weeks of notice. On the other hand the Ramadan policy excludes people who like John James have celiac disease and require that their medical diets a gluten-free diet be continued to be served to them during Ramadan. The district court overlooked these things and and dismissed the case as moot found that the grievances were not fully exhausted and accorded the defendants a qualified immunity. I want to start with that last part first the district courts decision to give qualified immunity to the individual capacity defendants. Here the clearly and without ambiguity about the prisons and jails obligations to provide a religiously adequate meal to its those that are in its custody. As long ago as 1987 in McAleer v. Babbitt the Ninth Circuit said quote inmates also have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion unquote. And years later six years later in the early 90s in Ward v. Walsh one of the most important Ninth Circuit precedents in this context it used the word established specifically in McAleer quote in McAleer we established the principle the inmates have the right to be provided with food that the qualified immunity to clearly establish law at issue in this case is the prison's obligation to provide those in its custody with a meal that satisfies their religious obligations. In this case for Naeem Lau, Jeremy Liebenstein and the rest of the plaintiffs those folks required a so they could eat after sunset and before dawn as Muslims observe Ramadan. So what case says that the person can enact or require a signup process before giving out those meals? There is no case on all fours that says that a three month or four month advance notice signup process How do you win the clearly established prong then with that concession? Well in Boyd the this court also said that a case doesn't necessarily need to be on all fours for the law to be clearly established and here what what how this how this how we would urge the court to view it the clearly inmates. The fact that they're requiring a signup process before that in an effort to exclude some people from those religiously adequate meals is the deviation from the clearly established precedent. It's not let's imagine Mr. Voss that we take your first point with which we agree presumably because it's the law about being entitled to a religiously appropriate diet and so on the first day of Ramadan the person says I would like to have my meal. Do you think that that person without any advance notice would be as a matter of law entitled to that meal? The prison would be obligated to do what it can do to provide that inmate with a meal. In this case these are an issue here these are TV style microwavable meals that are no different than the halal meals that are provided to Muslims throughout Washington Department of Corrections facility across the state which can be ordered you know with hours notice days notice. That's the point so and I agree with you that if it's feasible but let's say even on that point let's say there's not a long lead time as you have here but the prison says you know I hear you and I would give it to you but I order these meals with some precision and therefore that meal is we have not made advance arrangements for that meal. Would that part would that official be entitled to qualified immunity? Well I don't think so I think that the question would be what and this happens all the time in prisons and jails there's some paperwork snafu like for instance in this case Roberts the evidence indicates and his testimony reflects that he did sign up and they just it looks like lost the paperwork for it and so what happens at lots of prisons and jails if someone for whatever reason is not on a Ramadan list it's a prison it's a facility they'll go to the kitchen like they did in this case in response to the temporary restraining order they'll gather some food and they'll provide it to the inmate on an ad hoc basis until some more durable arrangement can be provided and I think that's what I think that's what the wisdom of the Ninth Circus precedent and Ward and McElyea reflects that it's a prisoner at jail with food stocks that exist and these are not difficult things for are they willing to give it to them and in this case especially the and the grievance reflect that for Muhammad Muhammad that the the food the cafeteria folks the food service people they wanted to account they learned at the very beginning of Ramadan that he was without food and in the reason he did not sign up for Ramadan was that his initial release date was before the got pushed back so after Ramadan 2018 so he asked to sign up at the beginning of Ramadan the food service people said okay we can do it but it was it was the it was the policy folks that said we we will not do it because of the policy so it's and that's I think a very important point here what the what they could have done to avoid liability was the easiest thing in the world for them to do Naeem Lau for instance who was threatened with being force-fed in his grievances he proposed well why don't you just let me go to the main line get food with everybody else put it in a to-go container or a bag and I'll eat it up myself that way no one has to do anything different than they're already doing and they said no did they accommodate him Mr. Mr. Lau after day eight yes your honor they did end up accommodating him after a number of days during Ramadan 2018 can I pivot with that that question to the administrative remedies I'm sorry exhaustion question so since since he was given relief does it does doesn't that mean that he exhausted his administrative remedies well your honor he wasn't given relief in accordance with a grievance he was really what happened as kind of an informal matter I think that after Naeem Lau was threatened with being force-fed against his what quote Ramadan hours against his religious beliefs that the facility officials stepped back from the brink and realized that it would just be easier for everybody involved to provide him food rather than not providing food and so they didn't change the policy they didn't they didn't validate his grievance but wouldn't it be to your clients advice advantage that they that he was given relief and that he did complete the grievance process so then there's no question about his exhaustion yes your honor that would be that would that would be I think a fair way of looking at it in terms of he was provided the relief that he was seeking in the the grievance form but on the other hands he was not provided that relief via the grievance process and he was not provided that level one stage of grievances is the stage of grievance where you could actually challenge the the policy itself and so the policy remained the same as it was when he grieved and you know obviously these prison grievance policies pose a barrier for prisoners there's no doubt about that but given the timing could he have not actually once his grievance was converted to a guess a non-emergent grievance he he didn't appeal that is that right he did not appeal the distinction the conclusion that his grievance was not emergency non-emergency grievance because there was no itself was not an emergency and so that is what we just asked you though then whether it was emergency or non-emergency he could have his appeal would have implicated the policy would it not had he gone his appeal and that would if it went through would have taken care of the main issue that you're talking about to get established what the prison should or shouldn't do well that's not the position that the defendants have taken in this case the the position that the defendants have taken is that once the month of Ramadan is over that there's nothing to grieve and there's nothing there's no remedy for them to provide and that's what I think underscores the the strength of the exhaustion arguments that the appellants make and I think I think on that point you know but it would still not so we don't have to necessarily take mr. Palmer in his state at face value on that because if you could have gone ahead to file a grievance really on that whole policy then allow may not have been even a plaintiff here correct if he got satisfaction and a ruling if the exotic the grievance process could fit within 30 days fit within the month of Ramadan and produce an outcome that that would that's kind of the tradition that would be an available PLRA remedy but the I think the issue here the fundamental issue on the question of who were in prison and the government's own documents and testimony show that the full exhaustion of a grievance process you're looking at 90 days that's what they target is 90 days for exhaustion and so that and that you know so it does it does it is important to plaintiff's hear that for for a name Wow for Jeremy Livingston for for Roberts that there is that unavailability of the administrative remedy but then for John James you're not saying that the fact that each day that goes by in Ramadan that they're not getting their meals that that is there because the process could take up to 90 days each day is not a violation that requires a remedy well each day does require a you know a remedy but the overall the injury is the denial of food after sunset and before dawn that was afforded and that injury certainly existed on multiple days for all of the plaintiffs but the the resolution of that injury should have if the food being given to all of these folks you want to save your remaining time yes good afternoon good afternoon your honors and may it please the court assistant attorney general Tim Fulner on behalf of Secretary Sinclair and the remaining Department of Corrections defendants the department has a simple sign up process for those individuals who wish to participate in its Ramadan meal program under that process incarcerated individuals must complete a one page form and provide the facility chaplain within the designated sign up period this process is designed to facilitate and allow the department to accommodate Muslim inmates who wish to participate in its Ramadan meal program this application of that process to plaintiffs in 2018 did not violate their clearly established constitutional rights as such the district court correctly dismissed their claims on summary judgment this court can affirm for three primary reasons first defendants were entitled to qualified immunity because they did not violate plaintiffs clearly established first or eighth amendment rights second any claim for injunctive relief was moot by the time of the proceedings in the district court at summary judgment and third plaintiffs had failed to exhaust their administrative remedies as required by the PLRA prior to the filing of the amended complaint before I turn to the issue of qualified immunity though I want to make an important clarification about the department's application to its grievance process contrary to what has been said about the defendant's position is that there's no policy in the Washington Department of Corrections that would render someone's grievance moot after the passage of Ramadan and we know that because Mr. James himself continued to pursue his grievance in 2018 after the end of Ramadan the defendants have never made that argument at any stage in these proceedings clearly people can seek relief through the department's process for past injuries they can seek relief in terms of a change of policy nothing supports the idea that the defendants have made that argument or that that their position you can clearly as Mr. James did seek some kind of administrative relief for past injuries in terms of the question of qualified immunity before you turn to qualified immunity I do have an exhaustion question for you and that relates to to Livingston and it seemed to me that Livingston was in one of the situations where he was told you might need to either rewrite and or more information so he supplies his more information and he even speaks with the grievance coordinator who doesn't say no you actually have to rewrite the thing I don't see why it would be reasonable to say that he has not exhausted his filing at that point ultimately he failed to exhaust your honor because he had the opportunity to appeal that and he's never testified that he misunderstood that opportunity in fact when he was asked in his deposition he said he didn't appeal so while he did have that conversation with the grievance coordinator the grievance coordinator understood the issue to be resolved he had an opportunity if he disagreed with that to appeal the grievance coordinator's decision he didn't do that and he testified in the district court that he misunderstood or anything like that in terms of what he could do next if he disagreed you disagree with the district court's finding on Mr. Livingston then with respect to the factual issue I do your honor because for a couple of reasons first of all the district court premised its ruling on the idea that he either misunderstood the process or was intimidated from pursuing his grievance they didn't make the intimidation argument in the district court or in this court on Livingston and they didn't make the misrepresentation argument in this court for sure and I don't think they really made it very clearly in the district court ultimately I think in order to support that kind of argument they need testimony from Mr. Livingston not just argument and he was asked did you appeal and he said no he didn't provide any explanation of no I didn't think I had that opportunity and just as a matter of common sense if you disagree with someone's decision like the grievance coordinator it would make sense that if he wants to continue to pursue the issue that he would take that up and have it reviewed by someone else without any testimony that he didn't understand he could do that the district court's decision finding some kind of misrepresentation or intimidation was was wrong on that issue I have a follow-up on that what I want to make sure I understand is with regard to Livingston that first level of review that he engaged in was it denied because he didn't provide enough information or because he didn't rewrite it or was it denied on the merits because he hadn't signed up it was denied I think it was twofold initially he got the rewrite decision from the grievance coordinator asking for more information but then the grievance coordinator called him in and spoke to him he got some more information but based on that conversation he asked Mr. Livingston did you sign up he said no and then the grievance coordinator asked him if the issue had been resolved and he said it had so the grievance coordinator believed that he wasn't pursuing the issue and he never followed up and said yes I want to appeal how do I appeal or anything like that he just didn't appeal so at that point I guess I'm struggling with what after after he has the interview with the grievance coordinator what what is the rewriting that would even happen because the grievance was resolved informally he can appeal the level zero it's called level zero that initial response to level one so he could have submitted a complaint form saying I disagree and I want to go to level one and continue to pursue the grievance so that wouldn't necessarily be a rewriting it would be a filling out a new form for a new level of review yeah I think it would be an appeal of the informal grievance response essentially can I ask about Lau so apparently on day eight the person started giving him the food he requested so how is he not exhausted his administrative remedies when he received the relief he requested well first of all because that argument hasn't been made either at this court or in the district court your honor and secondly because he that level one response said we're not going to accommodate you now apparently the grievance coordinator didn't know that he had been accommodated but he could have appealed and said well I've been accommodated now but I would like to continue to challenge the policy but he didn't do that he took the level one grievance response and didn't pursue it any further but at a minimum what is the mechanism given the timing of Ramadan and the signup process if a prisoner wants to get established that there's a constitutional violation to have an unreasonably long signup process well two things your honor first of all the fact that there is a longer signup process would actually provide a greater opportunity for someone to challenge the signup process itself so for example in January is when the signup process took place in 2018 and then there was testimony that they posted a list of inmates who had been signed up and facilitated if at that point the plaintiffs disagreed with that decision they had more than adequate time to fully exhaust their administrative remedies considering 90 days is the maximum before the start of Ramadan so how does that work how does that work because you do have prisoners coming in and out of the facility and in terms of whether that's a reasonable period to be able to sign up and have to challenge some of those prisoners come in on fairly short notice and they are accommodated or not they are your honor and so I think that that's there's been some confusion from the department facilities signs up to the same process and then that signup follows them so if someone's incarcerated in a different facility and transfers from the correctional complex they get accommodated if someone comes into the prison system after the signup period they get accommodated and we see that at ER 82 and 83 and then I believe SCR 33, 24 and 25 it talks about those exceptions Belinda Stewart the religious program manager's declaration or deposition testimony confirmed that there are people that are accommodated based on the fact they didn't have the opportunity to sign up in terms of the question of qualified immunity sorry before you get to that one I had a question about the the emergency grievance process so my understanding is if it's if the prisoner files an emergency grievance and it's health-related you could appeal it but if it's um and if it's if it's an emergency not health-related then it's kicked into the regular process so and how how can a prisoner appeal that decision of a non-health related emergency grievance without going through the the 90-day process? So a non-emergency a non-health emergency grievance so they can continue to appeal it through the regular grievance process they can complain about the fact that it was treated as a non-emergency versus an emergency grievance in the grievance process and that was confirmed by the deposition testimony of the offender grievance program manager at SCR 128 and 129 and that's also clear from the grievance program manual which is it's 282 talks about how at the next level you can confirm you can appeal an inadequate response to a previous level of the grievance. But so so that's my question if the injury is occurring and even though it's not a health related injury it seems like it's it's an odd situation that the person has no recourse but to wait to sustain the injury for the full 90 days and then go to court is that your position? I think that that's the correct interpretation of the law I think the primary position or problem for the plaintiffs your honor is that they didn't they weren't in the midst of pursuing the grievance process when they filed their lawsuit and other than James everyone else everyone else had abandoned the process so at a minimum if you assume that there's some kind of emergency exception which I don't think is very clear in terms of whether the supreme court's endorsed that idea at a minimum that rule should require someone being actively involved in the process and none of the plaintiffs were the four original plaintiffs had already abandoned the process John James was added later in the lawsuit but he was still exhausting at the time of the amended complaint so I think that's the fundamental problem for plaintiffs on the exhaustion argument. Let me ask you just again let me go back to Mr. Livingston just to understand because the district court on that found a material issue of fact with respect to intimidation on the filing of the grievance process what is your position with respect to the district court's finding? I think that is an error and a basis for this court to affirm on other grounds again I think it was waived I don't see that being argued either in the district court or below in and I don't know what that would be in terms of him being intimidated. Well when you say it was waived when the district court says looking at the record which the district court's entitled to do on a summary judgment I'm not sure where the waiver comes in because the district court talks about indicate records indicate Livingston had signed up etc he had observance of Ramadan was obstructed by administrative ineptitude so the district court made a finding on that so I don't think waiver would be the correct response. Well then if the court does a de novo review your honor I think it would have to identify something that Mr. Livingston is claiming that intimidated him from using the grievance process and for Livingston there's nothing in the record about anyone threatening him or saying don't use the grievance process or anything like that so on the grounds of intimidation I don't think it's factually supported even on the de novo review. Thank you. In terms of qualified immunity I think that the law is not clearly established at a high level and even looking closely at the circuit's unpublished decision in Riley versus Ewing both establish that there is some permissibility to use a sign up process to accommodate people who wish to have religious meals. After Resnick this court hasn't revisited that issue in any published opinion and there's no case law there's no robust consensus of authority that says prison officials violate the First Amendment by having an enforceable sign up process. Even if you look at it in Turner I want to just talk about the evidence presented in terms of why this process exists really quickly. The department's Ramadan meal program accommodates 500 people that is a significant increase of the number of people who are on halal meals normally which is about 100. The department has to continue to feed 17,500 individuals across five standard diets and 10 therapeutic diets during the course of Ramadan while also accommodating things like Passover. Each year Passover and Ramadan get closer and closer in 2021 they will overlap so they're facilitating the meal programs simultaneously. The department's experience in having a less enforceable sign up deadline is problematic. In Passover 2016 at SCR 72 there's a discussion about what happened with Passover one year they had a 260 inmates on kosher diet all 1,800 signed up to participate in Passover so an increase of nine times the number of inmates. If that were to happen in the course of a Ramadan meal program the department would not be able to facilitate its Ramadan meal program. Here that we would ask simply that the court affirm the district court's dismissal on summary judgment. Thank you. Mr. Abbas. I unmute myself. Council for the Appellees says today that yeah we have the sign up process and so important but in the nature of the prison with people coming and going we all the time provide exceptions to people based on its sign up process all the time every day. They provide an exception to Nayeem Rao when they saw that he was stumbling about. They can do this and they just don't want to do this and that is not consistent with the law. Well I'm going to ask you it might be that can't do that with 5, 6, 800 or 1,900 people. So my question is this what is the precise constitutional violation in your characterization that we would be looking at here? How would it be defined? Well you have the four Turner factors but I think that the law that's being violated is that the religious diet is being withheld without penological justification but there's no penological reason why they can't provide these people food of some kind. There's no penological reason why they can't order more food or they're all frozen it's not going to go to waste and so I think that is the specific rule of law on the free exercise clause that that they're beyond time but just one comment on John James. Year after year John James has provided gluten filled food just during the month of Ramadan. 11 months of the year he's provided a gluten free meal. He exhausted through all three levels of the grievance process in 2015. He exhausted again all through every level of the grievance process in 2017 and yet the appellees again today as they have throughout this proceeding argue that we should ignore this court should ignore all those grievances and not adjudicate the fact that the the Washington Department of Corrections refuses to provide to this day refuses to provide John James with gluten free meals as the constitution requires. Thank you Your Honor. Thank you. I'd like to thank both counsel for the argument today very helpful. The case just argued is submitted Roberts versus Sinclair and we'll now hear argument in Landis versus the Washington State Major League Baseball Stadium Public Facilities District. Thank you.
judges: McKeown, Hunsaker, Bumatay